ADAMS, J.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY GARNER, et al., ) | CASE NO.  1:02CV1286 |
| ) | |
| Plaintiffs, ) | |
| ) | JUDGE JOHN R. ADAMS |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| CUYAHOGA COUNTY JUVENILE ) | AND ORDER RE:  PLAINTIFFS' |
| COURT, et al., ) | MOTIONS FOR SANCTIONS |
| ) | [RESOLVING DOCS. 268, 270, 275, |
| Defendants. ) | AND 333] |

On March 27, 2006, the Court conducted a hearing on the following motions:

Plaintiffs' Motion for Sanctions (Doc. 268);

Plaintiffs' Motion for Sanctions (Doc. 270); and

Plaintiffs' Third Motion for Sanctions (Doc. 275).

The hearing consisted of oral arguments by counsel and evidentiary presentations on the issue of whether the plaintiffs have met their burden to show that sanctions should be awarded.[1]  For the reasons that follow, the Court holds that the plaintiffs have not met their burden.  Therefore, plaintiffs' Motions for Sanctions will all be denied.  Defendants' Motion to Strike Untimely Affidavit (Doc. 333) will also be denied.

---

[1] On April 7, 2005, the plaintiffs filed a Notice of Appeal (Doc. 262) challenging the grant of summary judgment in favor of the defendants on all of the claims of all plaintiffs who had not been voluntarily dismissed from the case.  On August 2, 2006, the Court of Appeals for the Sixth Circuit affirmed on the basis of the reasoning detailed in this Courts Opinions.  *Garner v. Cuyahoga County Juvenile Court*, 194 Fed.Appx. 279, 284 (6th Cir. 2006).  The mandate issued on November 8, 2006, with costs in the amount of $3,571.75 for copy charges to be recovered by Appellee Cuyahoga County Juvenile Court.  Plaintiffs filed a petition for *certiorari* in January 2007. 75 USLW 3409 (Jan. 26, 2007) (No. 06-1066).  The petition and response were distributed for Conference of March 30, 2007.

I.

In their Motion for Sanctions (Doc. 268), filed on May 2, 2005, the plaintiffs move the Court for an order of sanctions "for the outright false statements made by defendant Judge Russo [at the Status Conference held on January 12, 2005],[2] and as against Attorneys Kuhlman and Colaluca for not correcting their client's false statements when they were made to the court." *Id.* at 1.[3]  The Court has reviewed the memorandum in support, affidavit of Merrie Frost (Doc. 273), memorandum in opposition (Doc. 274), and reply memorandum (Doc. 275).

Plaintiffs argue that "Judge Russo did not have full settlement authority; the only persons with full settlement authority would be the County Commissioners." Doc. 268 at 2.  They also assert: "the County Commissioners would have minutes to their meetings wherein they agreed to pay $500,000, if they had really offered that amount of money.  Additionally, the County Commissioners can testify that they are the only ones with full settlement authority." *Id.*

Plaintiffs Thomas Washington, Spencer Bellamy, and Monique Moore testified at the hearing that they attended the Status Conference held on January 12, 2005, and that defendant Joseph F. Russo, Administrative Judge of the Cuyahoga County Juvenile Court made two false statements to the Court at the conference.  First, that the defendants had offered to settle the case for $500,000.  Second, that he had full settlement authority.  Plaintiff Sonja Colwell testified at the hearing that she was present at the mediation conducted in this case on July 14, 2003, but there had never been an offer to settle the case for $500,000.  Plaintiffs Washington, Bellamy, and Moore were called to testify, even though it is undisputed that they were not present at the mediation.

---

[2]Therefore, plaintiffs' first motion for sanctions was not filed until almost four months after the conference.

[3]The Status Conference was not conducted on the record.

2

Judge Russo testified on cross-examination that he remembered making a statement at the Status Conference that there had been an offer to settle the case at bar for $500,000. However, he did not remember stating that he had full settlement authority.

After being subpoenaed by the defendants, Timothy A. Ita, Esq. also testified at the hearing.[4]  His testimony tracked ¶ 15 of the affidavit (Doc. 306) that he had previously filed, which states:

> My next involvement was with the 7/14/03 mediation with plaintiffs, defendants, and Judge Lambros, with whom (Judge Lambros) I have been previously involved in several mediations.  As best I can recall, I would have met the various plaintiffs there, but Merrie was the primary communicator with them during the day long session.  My notes of that proceeding reflect, among other things, the following (I will be somewhat limited here in light of privilege issues and Rule 408 considerations, but counterbalanced by the fee-shifting factor of settlement offers and my own role in the matter in mind): prior to the mediation the county had offered in writing $100,000 globally to 10 of the plaintiffs if they would all resign as well; those 10 were at the mediation.  The other 5-6 would receive no offer and the county intended to move for summary judgment on those claims. The initial (counter) demand of the plaintiffs at the mediation exceeded seven figures.  Cuyahoga County Commissioner Peter Lawson Jones attended for some time (the only county commissioner to do so) and spoke briefly in the middle of the day to the plaintiffs, along the lines of "I understand your concerns about the detention center and we're trying to address them."  At around the same time, early afternoon or so, Attorney Tom Colaluca, the lead defense attorney, pulled me personally aside alone to discuss settlement posture.  It was my impression that he did this because he perceived me to be a mollifying influence on the plaintiffs and on Merrie.  Without addressing further the mediation back and forth (Rule 408 and other reasons, see above, unless the Court directs me to do so), the plaintiffs had on the table later in the day a formal demand well under a million dollars and it was my understanding at the end of the day that both sides were prepared to *recommend* to their respective clients a global settlement (for the 10) of $500,000, but that the material hang-up was whether the 10 would also resign as part of the settlement.  The defense would recommend less than half that amount if the plaintiffs would not resign.  Even though the parties and Judge Lambros had previously reserved the next day 7/15/03, for continued mediation, the defendants indicated to Judge Lambros that they did not intend to attend another day, and the day broke up on that note, with an impression on my part

---

[4] A copy of the original notes of Attorney Ita from the mediation (Defendants' Exhibit 1) were filed and placed under seal. *See* Exhibit and Witness List (Doc. 326) and Order (Doc. 328).

3

>that discussions would perhaps continue through Judge Lambros. I have 11 pages of notes from the mediation.

(Emphasis added.) Attorney Ita's testimony leads the Court to conclude that there was a discussion at the mediation about an offer to settle the case at bar for $500,000. However, according to Attorney Ita's testimony, there never was an actual offer of $500,000.

In a letter dated July 10, 2003 (four days prior to the mediation), the defendants did offer to settle the suits of plaintiffs Richardson, Brown, Dennis, Isom, Jenkins, Lilly, McCollough, McNear, Colwell, and Prather for a lump sum of $100,000 in the interests of avoiding further costs. Doc. 246 at Ex. 3. Plaintiffs Washington, Bellamy, and Moore were not included in this written offer of settlement. So, not only were plaintiffs Washington, Bellamy, and Moore not present at the mediation conducted in this case on July 14, 2003, they were not included in the only written offer to settle the suits of 10 of the plaintiffs. The Court, therefore, does not find it remarkable that plaintiffs Washington, Bellamy, and Moore would testify at the hearing that they have never been offered $500,000 to settle their suits.

According to the original Notice (Doc. 220) setting a Status Conference, "[l]ead counsel, all remaining plaintiffs, and a representative of defendants with full settlement authority shall attend." Only the claims of plaintiffs Washington, Wesley, Bellamy, and Moore remained pending before the Court at the time of the conference. Judge Russo attests: "I authorized my attorneys to offer $5,000.00 apiece to settle the actions of each of the three remaining Plaintiffs."[5] Ex. A to Doc. 274 at ¶ 7. Nowhere do the plaintiffs' dispute that as the Administrative Judge, he has the authority to authorize expenditures that are within the Juvenile Court budget. An expenditure of $15,000 could probably have been paid from the Juvenile

---

[5] The day after the conference, plaintiffs' filed a Motion for Partial Dismissal (Doc. 225) of the claims of plaintiff Wesley and all of the claims of plaintiffs Washington, Bellamy, and Moore, except for their race discrimination claim and their *Greeley* claim.

4

Court budget. *See* Affidavit of Gina A. Kuhlman (Ex. B to Doc. 274) at ¶ 11 and Affidavit of Thomas L. Colaluca (Ex. C to Doc. 274) at ¶ 11. Therefore, the Court holds that a representative of defendants with full settlement authority did attend the Status Conference held on January 12, 2005. Furthermore, whether there was a $500,000 offer made at the mediation in July 2003 had no bearing upon a possible settlement of the claims of the remaining plaintiffs in January 2005.

Not until the reply memorandum was filed, did the plaintiffs provide the Court with the basis under the law for this motion. *See* Doc. 275 at 1. In response to a question from the undersigned, Attorney Frost stated at the hearing that the Court has the inherent authority to impose sanctions whenever there is an attorney that is lying to the Court.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court emphasized that the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation. The Supreme Court affirmed the district court's award of attorney's fees and expenses for the defendant's series of meritless motions and pleadings and delaying actions. *Id.* at 38. However, the Supreme Court stated that "the court ordinarily should rely on the Rules [and statutes] rather than the inherent power." *Id.* at 50.

The Court of Appeals for the Sixth Circuit stated in *Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 93-94 (6th Cir. 1988), that, absent Congressional authorization, federal courts may exercise inherent powers to award attorney's fees in "narrowly defined circumstances." When an attorney or litigant has demonstrated bad faith in the conduct of litigation, the court has the inherent authority to assess an award of attorney's fees. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980). If the district court uses its inherent powers to sanction, it must find that the questioned conduct constitutes or is tantamount to bad faith. *Id.* at 767. Attorney's fees have also been awarded under inherent authority "in the interest of

5

justice" with no finding of bad faith. *Ray A. Scharer and Co., Inc.v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 320 (6th Cir. 1988).

In *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002), the Sixth Circuit held that a district court has the inherent authority to impose an award of attorney's fees and other sanctions against a party in its discretion, if: (1) the claim asserted by the party was meritless; (2) counsel knew or should have known that the claim was meritless; and (3) the claim was filed for an improper purpose such as harassment or delay. *Id.* at 519-24. "In this Circuit, 'bad faith' is a requirement for the use of the district court's inherent authority, but this Circuit has also upheld the use of such sanctions for conduct that 'was tantamount to bad faith.'" *Id.* at 519. The moving party must prove by clear and convincing evidence that the other party's actions are entirely without color and are motivated by bad faith. *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) ("courts require clear and convincing evidence before imposing attorneys' fees under their inherent power"); *Autorama Corporation v. Stewart*, 802 F.2d 1284, 1287 (10th Cir. 1986) ("it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that the challenged actions are taken entirely without color and are pursued for reasons of harassment or delay"); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2nd Cir. 1982) ("We have required . . . that there be 'clear evidence' that the challenged actions 'are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes."), *cert. denied*, 464 U.S. 818 (1983).

The Court finds that the plaintiffs have not met their burden to show that Judge Russo made false statements and that defense counsel failed to correct the statements. Even Attorney Frost acknowledged near the end of the hearing that at the very least there is an issue as to whether Judge Russo and/or defense counsel told the truth. Since the Court does not find bad

6

faith or that the conduct of Judge Russo and his counsel was "tantamount to bad faith," the Court will not award sanctions based on its inherent authority. *See Roadway Express*, 447 U.S. at 767; *First Bank of Marietta*, 307 F.3d at 517.

II.

Citing *Glass v. IDS Financial Services, Inc.*, 137 F.R.D. 262 (D.Minn. 1991), the plaintiffs move the Court for an order of sanctions "as against defendants and/or defense counsel for their filing of summary judgment motion in excess of the thirty page limit as set by this court." Doc. 270 at 1. The Court has reviewed the memorandum in support, affidavit of Merrie Frost (Doc. 276), and memorandum in opposition (Doc. 277).

Defendants requested an order from the Court allowing an extension of the page limitation to 75 pages for dispositive motions. *See* Doc. 125. They subsequently modified the request to 50 pages for each motion. *See* Doc. 131 at 3-4 and Doc. 132. On September 10, 2003, the Court denied the request by marginal entry order ( Doc. 133). Plaintiffs argue that the defendants exceeded the page limitation when they filed 11 separate motions for summary judgment (Docs. 135-45). The Court finds this argument to be lacking in merit. At the Status Conference held on August 5, 2003, the parties were instructed to comply with the page limitation set forth in Judge O'Malley's Order (Doc. 12) setting a limit of 30 pages per dispositive motion.[6] The memoranda relating to the motions for summary judgment complied with that instruction. As the Sixth Circuit acknowledged, "although the district court *did* impose a 30-page limit for briefing the dispositive motions, the 30-page limit applied to *each* of CCJC's motions for summary judgment. With 14 employees remaining in the case, there were

---

[6]"Appendices of evidentiary, statutory or other materials are excluded from these page limitations." Local Rule 7.1(f).

7

14 motions for summary judgment or for partial judgment on the pleadings filed by CCJC." *Garner*, 194 Fed.Appx. at 283 (emphasis in original).

On March 25, 2004, the Court denied by marginal entry order plaintiffs' Motion for Leave to Include Additional Evidentiary Materials (Doc. 186). The marginal entry order provided in part that "Plaintiffs were granted an extension of 30 pages for their Opposition to Defendants' Motions for Summary Judgment only because Defendants were permitted to exceed page limitations." *See* Doc. 204.[7] Plaintiffs correctly note that the defendants exceeded the page limitation when they submitted the 11 motions for summary judgment. As a result of the defendants' excess, the Court *sua sponte* granted the plaintiffs additional pages for their memorandum in opposition to the motions for summary judgment. *See Garner*, 194 Fed.Appx. at 283.

The Court, therefore, holds that sanctions against defendants and/or defense counsel are not appropriate because the Court, on its own initiative at the December 30, 2003 Pretrial Conference, opted to grant the plaintiffs the remedy of supplementing their memorandum in opposition to the motions for summary judgment. The plaintiffs, however, failed to take full advantage of this extension, choosing instead to file a Motion to Strike Defendants' Motions for Summary Judgment (Doc. 189); and, thereafter, to submit only 18 additional pages.[8] *Garner*, 194 Fed.Appx. at 283.

### III.

In the Third Motion for Sanctions (Doc. 275), plaintiffs move the Court for an order for

---

[7]The case at bar was assigned to the standard case management track. *See* Doc. 12 at 1. It is to be noted that the page limitation set forth at page 3 of Judge O'Malley's Order--setting a limit of 30 pages per dispositive motion--allows for 10 pages more than is permitted by Local Rule 7.1(g).

[8]*See* Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 193).

sanctions "against Attorney Kuhlman and/or defendants pursuant to Civ. R. 11 for her false statement on page 3 of her opposition brief," *id.* at 1, "where she states that there were no allegations of wrongdoing until after they[defendants] filed for attorney fees." *Id.* at 5.[9]  The Court has reviewed the memorandum in support, affidavit of Merrie Frost (Doc. 332),[10] and memorandum in opposition (Doc. 278).  Plaintiffs did not file a reply memorandum in support of the motion.[11]  Plaintiffs also did not offer any further evidence at the hearing regarding their third motion.

The Court finds that the plaintiffs are not entitled to Rule 11 sanctions for the same reason that the Court denied defendants' Motion for Attorney's Fees as Sanctions under Rule 11 (Doc. 263), *i.e.*, there has not been a sufficient showing of compliance with the "safe harbor" provision of Fed. R. Civ. P. 11. *First Bank of Marietta*, 307 F.3d at 526-28.[12]  When a party moves for sanctions under Fed. R. Civ. P. 11, a safe harbor provision gives the attorney and parties against whom sanctions are to be sought the opportunity to withdraw or correct the challenged document without adverse consequences.  Rule 11(c)(1)(A) provides that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service

---

[9]Specifically, Attorney Kuhlman wrote the following: "Notably, it was not until the Court subsequently granted summary judgment to Defendants on the remaining claims, and after Defendants sought attorneys' fees, costs, and sanctions, that Plaintiffs and their counsel leveled accusations of improper conduct arising from the January 2005 settlement conference." Doc. 274 at 3.

[10]The original affidavit (Doc. 275-2) is not in the proper form.  It does not contain the original signature of the affiant.  There is also no evidence that it was sworn to or affirmed before a legally authorized officer because there is no jurat.  Finally, it does not contain an original signature of a notary. *See* CM/ECF User's Manual at 14.  At the hearing, the undersigned commented on the fact that the original affidavit is not in the proper form and instructed Attorney Frost to address that as soon as she could.  Attorney Frost, however, did not attempt to remedy this matter until June 16, 2006--almost three months later.  Nevertheless, the Court has considered the affidavit and will deny defendants' Motion to Strike Untimely Affidavit (Doc. 333).

[11]The primary purpose for allowing the moving party to serve and file a reply memorandum is so it can respond to any new issues raised by the memorandum in opposition.

[12]*See* Order (Doc. 291), entered on October 7, 2005, at 54-55.  This Order was, therefore, available to the plaintiffs for over five months prior to the hearing.

9

of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." A party seeking sanctions under Rule 11 first must serve (but not file) the motion for sanctions upon the party against whom sanctions are sought as provided by Fed. R. Civ. P. 5. The moving party may file the motion in the trial court only if, after 21 days, the party against whom sanctions are sought has not corrected or withdrawn the allegedly offending document. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.2 (2004).

For the reasons set forth in Doc. 278 and the arguments of Attorney Kuhlman at the hearing, the Court finds the plaintiffs' arguments in support of this request for sanctions to be lacking in merit.

IV.

For the foregoing reasons,

Plaintiffs' Motion for Sanctions (Doc. 268) is DENIED.

Plaintiffs' Motion for Sanctions (Doc. 270) is DENIED.

Plaintiffs' Third Motion for Sanctions (Doc. 275) is DENIED.

Defendants' Motion to Strike Untimely Affidavit (Doc. 333) is DENIED.

IT IS SO ORDERED.

| March 30, 2007 | */s/ John R. Adams* |
|---|---|
| Date | John R. Adams |
| | U.S. District Judge |