UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
ANTHONY GARNER, *et al.*, :
: CASE NO. 1:02-CV-1286
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 358, 359, 360, 362]
:
CUYAHOGA COUNTY :
JUVENILE COURT, *et al*, :
:
Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This case involves the Plaintiffs' and their attorney Merrie Frost's liability for costs, attorneys fees, and sanctions. For the reasons discussed below, the Court holds Plaintiff Vanessa Brown liable for **$8883.91** in attorney fees, Plaintiff Rayshunn Lilly liable for **$6789.03** in attorney fees, Plaintiff Anthony Garner liable for **$5000.00** in attorney fees, and attorney Merrie Frost jointly and severally liable for **$20,672.94** with Plaintiffs Brown, Lilly & Garner for their respective fee awards and solely liable for **$29,851.54** in attorney fees as a sanction..

**I. Background & Procedural History**

The Plaintiffs, African-American employees of the Cuyahoga County Juvenile Court, brought claims for discrimination against several of their administrators and supervisors. Ultimately, U.S. District Court Judge John Adams granted summary judgment in favor of the Defendants. The court of appeals affirmed. *Garner v. Cuyahoga County Juvenile Court*, 194 Fed. App'x 279 (6th Cir.

Case No. 1:02-CV-1286
Gwin, J.

2006).

On August 31, 2005, Judge Adams granted the Defendants' motion for costs against the Plaintiffs. [Doc. 283.] On October 7, 2005, Judge Adams further granted the Defendants' motion for attorney fees. [Doc. 291.] The Court held a hearing on the fee award in March 2006.

Finally, on March 30, 2007, Judge Adams found that the Plaintiffs' claims were frivolous under 42 U.S.C. § 1988 and that attorney Frost engaged in conduct sanctionable under 28 U.S.C. § 1927. Accordingly, Judge Adams ordered thirteen Plaintiffs pay $69,345.23 in costs,[1] ten of the Plaintiffs jointly and severally pay $660,103.49 in attorney fees,[2] and attorney Frost jointly and severally pay the same fees as a sanction. [Doc. 339.]

On appeal, the Court of Appeals for the Sixth Circuit upheld Judge Adams's findings but remanded with instructions to provide a more detailed fee and sanction award. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624 (6th Cir. 2009). Specifically, the court of appeals stated:

> With respect to the attorney fees to be imposed on the employees under 42 U.S.C. § 1988, we **REMAND** with instructions to (1) determine the point in time when each employee's claim clearly became frivolous (which might simply be at the close of discovery), (2) calculate, on an individual basis, the attorney fees owed by each employee after that point in time, and (3) consider any new information proffered by the employees regarding their inability to pay, as well as relevant evidence on this issue that already exists in the record.
>
> With respect to the attorney fees to be imposed on Attorney Frost under 28 U.S.C. § 1927, we **REMAND** with instructions to (1) determine the point in time when the pursuit of each of her clients' claims became unreasonable and vexatious, (2) calculate the attorney fees owed by her after that point in time, (3) decide whether

---

[1] The Court imposed costs on Plaintiffs Spencer Bellamy, Vanessa Brown, Tiffanie Dennis, Anthony Garner, Shelley Isom, Terrance Jekins, Rayshunn Lilly, Heather McCollough, Patricia McNear, Monique Moore, Nathaniel Prather, Bruce Richardson, and Thomas Washington. *Garner*, 554 F.3d at 630.

[2] The Court imposed liability for attorneys fees on Bellamy, Brown, Dennis, Garner, Isom, Lilly, McNear, Moore, Richardson, and Washington. *Garner*, 554 F.3d at 630. In other words, Jenkins, McCollough, and Prather were excluded from the fee award.

Case No. 1:02-CV-1286
Gwin, J.

> that liability should be joint and several with each of her clients, and (4) consider any proof that she may wish to present regarding her inability to pay.

554 F.3d at 646. On remand, Judge Adams recused himself from further proceedings in the case under 28 U.S.C. § 455. [Doc. 353.] The case was reassigned to this Court on August 3, 2009.

On September 14, 2009, this Court ordered the parties to submit briefing on the issues raised by the court of appeals. [Doc. 355.] After the Defendants filed an opening brief as scheduled, [Doc. 358], several of the Plaintiffs filed motions seeking a status conference to potentially resolve the case. [Doc. 360, 362.] Accordingly, the Court set a status conference on December 16, 2009. [Doc. 367.]

Ten of the Plaintiffs attended the status conference—all but Plaintiffs Brown, Lilly, and Prather. Plaintiff McCullough attended by telephone. In addition, Plaintiff Sonja Colwell attended even though no court had ordered her to pay either costs or attorney fees. *See Garner*, 554 F.3d at 635.

At the conclusion of the conference, nine of the Plaintiffs settled with the Defendants. Specifically, Plaintiffs Bellamy, Dennis, Isom, McNear, Moore, Richardson, Washington, Jenkins, and McCollough agreed to pay $5,000 by June 30, 2010, to settle the fee and cost issues with the Defendants. Plaintiff Moore, however, stated that she would need more time to pay.

Plaintiff Garner did not settle and asked for time to consult an attorney. The Court gave Garner two weeks to either accept the settlement or to respond to the Defendants' opening brief. Two weeks later, Garner filed a pro se objection to the settlement, stating that his liability should have been discharged in a prior bankruptcy. [Doc. 372, 374.]

Attorney Frost also participated in the status conference. Although Frost agreed to pay

Case No. 1:02-CV-1286
Gwin, J.

$75,000, she did so subject to being able to reach a payment plan with the Defendants. On December 29, 2009, Frost filed an objection to the settlement agreement saying that the Defendants had refused to discuss any payment agreement. [Doc. 371.]

In sum, the case now stands as follows:

Plaintiffs Bellamy, Dennis, Isom, McNear, Richardson, Washington, Jenkins, McCollough, and Moore have settled the Defendants claims for fees and costs with the Defendants. Accordingly, the Court does not consider their liability in this opinion.

Plaintiff Garner has filed objections to the settlement, arguing that a prior bankruptcy discharged his liability for any costs and attorneys fees. [Doc. 372, 374.] Because Garner never agreed to the settlement, the Court considers these objections as responses to the Defendants' opening brief.

Attorney Frost has filed an objection to the settlement, [Doc. 371], a Motion to Stay this case pending resolution of a Federal Bureau of Investigation inquiry into corruption in the Cuyahoga County government, [Doc. 359], and a Notice of Inability to Pay. [Doc. 366.] Because Frost did not make any additional filing in the two week period provided by this Court, the Court treats those prior filings as Frost's response to the Defendants' opening brief.

Finally, Plaintiffs Brown, Lilly, and Prather did not attend the settlement conference and have not filed any briefings or motions in this Court. Because Judge Adams held Prather liable only for costs and the court of appeals did not disturb this ruling, the Court considers only Brown's and Lilly's liability for fees in this opinion.

## II. Analysis

In remanding the case, the court of appeals directed this Court to make the following

-4-

Case No. 1:02-CV-1286
Gwin, J.

determinations:

> With respect to the attorney fees to be imposed on the employees under 42 U.S.C. § 1988, we **REMAND** with instructions to (1) determine the point in time when each employee's claim clearly became frivolous (which might simply be at the close of discovery), (2) calculate, on an individual basis, the attorney fees owed by each employee after that point in time, and (3) consider any new information proffered by the employees regarding their inability to pay, as well as relevant evidence on this issue that already exists in the record.
>
> With respect to the attorney fees to be imposed on Attorney Frost under 28 U.S.C. § 1927, we **REMAND** with instructions to (1) determine the point in time when the pursuit of each of her clients' claims became unreasonable and vexatious, (2) calculate the attorney fees owed by her after that point in time, (3) decide whether that liability should be joint and several with each of her clients, and (4) consider any proof that she may wish to present regarding her inability to pay.

*Garner,* 554 F.3d at 646.

### A. Attorney Fees

After the December 2009 status conference, only Plaintiffs Brown, Lilly, and Garner have undetermined liability for the attorney fees award in this case. The Court considers their liability on an individual basis below.

*1. Plaintiff Vanessa Brown*

The Court finds Plaintiff Vanessa Brown liable for **$8883.91** in attorney fees.

First, the Court holds that Plaintiff Brown's claim clearly became frivolous at the close of discovery in this case: July 31, 2003. As Judge Adams repeatedly noted in his opinion granting attorney fees to the Defendants, "[T]he plaintiffs should have dismissed these claims after discovery had shown that they were without factual support." [Doc. 291 at 38-39.] Although the possibility remains that Plaintiff Brown's claim became frivolous prior to this date, the close of discovery provides Brown with the most generous presumption in her favor. Moreover, the Defendants agree

Case No. 1:02-CV-1286
Gwin, J.

that July 31, 2003, is the proper cutoff date. [Doc. 358 at 10.]

Next, the Court calculates the attorney fees owed by Plaintiff Brown. With their opening brief on the issue, the Defendants say that Brown is responsible for $19,889.72 in "non-fractionable fees"—i.e., fees incurred in the general defense of the case and not attributable to the claims of a particular plaintiff. [Doc. 358 at 12-13.] Moreover, the Defendants claim that Brown is responsible for $4,320 in fees specific to the defense against her case.[3] [Doc. 358 at 15.] Neither the Plaintiffs nor attorney Frost make any challenge to the calculations performed by the Defendants.

The Court declines to award the full amount requested by the Defendants, however. Specifically, although the Defendants seek $39,939.87 in fees for "the pursuit of fees, costs, and sanctions," the Sixth Circuit has held: "In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986) (Title VII case); *see also Gonter v. Hunt Valve Co.*, 510 F.3d 610, 620 (6th Cir. 2007) (applying *Coulter's* 3% rule to attorney fees litigation under False Claims Act). The maximum total fee award in this case is $298,515.40.[4] Because the Court held a hearing but did not hold a full trial on the matter of fees, the Court uses a 4% multiplier and limits any fees for "pursuit of fees, costs, and sanctions" to $11,940.62. Accordingly, the total "non-fractionable" fee available in this case is $250,456.87.

---

[3] To arrive at these numbers, the Defendants reviewed billing records submitted to this Court on October 28, 2005. [Doc. 294, 295.] They then isolated those fees incurred after July 31, 2003, and apportioned the fees among the responsible Plaintiffs where the billing entry reflected one or more Plaintiffs. [Doc. 358 at 13-14.] Finally, the Defendants prepared an itemized summary of the fees claimed against each Plaintiff in this case.

[4] This number includes $238,516.25 in non-fractionable general fees, excluding the pursuit of fees, costs, and sanctions ($39,939.87) and $59,999.15 in fees attributable to individual plaintiffs.

Case No. 1:02-CV-1286
Gwin, J.

Undertaking its own review, the Court finds Plaintiff Brown owes $22,209.78 in attorney fees. This number represents both the fees attributable to the specific defense of her case, $4320, as well as fees incurred in the general defense of the case, $17,889.78. Assigning a share of the nonfractionable fees to Brown is appropriate because her claims did share some common characteristics with the other Plaintiffs' claims, such as a disparate impact allegation. *See Garner, 554 F.3d at 641*. Moreover, Brown's claims necessarily caused the Defendants to incur fees for work attributable to defending the case as a whole, including preparing for and attending conferences and hearings, preparing for trial, and pursuing and defending the fee award.

Finally, the Court considers Plaintiff Brown's inability to pay the fee award. According to the evidence already in the record, Plaintiff Brown earned approximately $55,000 annually in 2000 and 2002. [Doc. 288-4 at 28, 30.] As noted above, despite this Court's order to do so, Brown did not submit any information to supplement that evidence. It is the plaintiff's burden to show an inability to pay the fee award, *Garner, 554 F.3d at 642*, and no evidence already in the record indicates Brown's inability to pay at least some award. Indeed, Brown's 2000 and 2002 income–the only information available to the Court on Brown's ability to pay–is well above the median Cleveland family income. *See U.S. Census Bureau, 2000 Fact Sheet - Cleveland city, Ohio* (1999 Cleveland median family income $30,286). Brown has not, for example, indicated he lost his source of income, has nondiscretionary expenses limiting his ability to pay, has dependents, or will suffer unnecessary harm if forced to pay at least some fee award.

Nonetheless, the Court's "primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir.1999)*. Because Brown is of modest income, the Court finds partial inability to pay and lowers Brown's liability for attorneys fees by

Case No. 1:02-CV-1286
Gwin, J.

60%. Therefore, Brown is liable for **$8883.91** in attorney fees.

*2. Plaintiff Rayshunn Lilly*

The Court finds Plaintiff Rayshunn Lilly liable for **$6789.03** in attorney fees.

For the reasons discussed above, the Court holds that Plaintiff Lilly's claim clearly became frivolous at the close of discovery in this case: July 31, 2003. Next, the Court determines the attorney fees owed by Lilly individually. First, for the reasons discussed above, the Court finds Lilly responsible for $17,889.78 as his share of the non-fractionable fee. The Court further finds $9,266.32 in fees attributable to defending Lilly's claims after July 31, 2003.

Finally, the Court looks to evidence of Plaintiff Lilly's inability to pay the award. Similar to Plaintiff Brown, the only evidence in the record are two state taxpayer files indicating that Lilly earned approximately $33,000 and $31,000 in 2000 and 2002 respectively. [Doc. 288-4 at 11, 13.] Plaintiff Lilly did not submit any supplemental financial information. Again, it is the plaintiff's burden to show an inability to pay the fee award, and no evidence in the record indicates a complete inability to pay. Lilly is, however, of modest income. The Court finds partial inability to pay and lowers Lilly's liability for attorneys fees by 75%. Therefore, Lilly is liable for **$6789.03** in attorney fees.

*3. Plaintiff Anthony Garner*

The Court finds Plaintiff Anthony Garner liable for **$5000.00** in attorney fees.

As an initial matter, the Court finds that Garner's claim clearly became frivolous at the close of discovery on July 31, 2003. In addition, the Court determines that Garner is responsible for $17,889.78 of the non-fractionable fee and $8,962.32 in fees specific to the defense of his case. Regarding Plaintiff Garner's ability to pay the award, tax records already before this Court indicate

Case No. 1:02-CV-1286
Gwin, J.

that Garner earned approximately $68,000 in 1999, $72,693 in 2001, and $57,191 in 2002. [Doc. 288-4 at 4-6.]

Although Plaintiff Garner did not supplement this information, he did object to the Defendants' proposed settlement on the grounds that a bankruptcy discharged his liability for costs and fees in this case. [Doc. 372, 374.] According to records in the United States Bankruptcy Court for the Northern District of Ohio, Plaintiff Garner filed a voluntary petition for Chapter 7 bankruptcy on February 13, 2006. [Case No. 06-10352.] On May 31, 2006, Garner received a discharge under 11 U.S.C. § 727.

Unlike Garner's co-Plaintiff Sonja Colwell, Garner did not inform either the Defendants or the Court of his bankruptcy, even though Garner filed the bankruptcy petition four months *after* the Court found him liable for attorney fees in this case. Regardless, Garner's bankruptcy presents two issues: (1) whether the automatic stay voids or makes voidable any of the subsequent proceedings against Garner; and (2) whether Garner's bankruptcy discharges his liability for attorney fees in this case.

As to the stay, although actions taken in violation of the stay are generally invalid and voidable, the Sixth Circuit has held that equitable exceptions to this rule may apply where "the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993); *see also Roseman v. Roseman*, 14 F.3d 602 (table), 1993 WL 513899 at *4 (6th Cir. 1993) (refusing to void state court proceedings conducted during automatic stay where plaintiff "did not move to have the bankruptcy court declare the defendant's actions void," and "actively took part in

Case No. 1:02-CV-1286
Gwin, J.

the . . . proceedings never seeking protection under the automatic stay and making no effort to inform the state court of his pending bankruptcy until [after judgment]."); *Mitchell v. Home Echo Club, Inc.*, No. 2:06CV525, 2009 WL 1597901, at *1 (S.D. Ohio June 4, 2009) (holding automatic stay did not void subsequent action where defendant debtor did not include plaintiff creditor on bankruptcy schedules, creditor had no other notice of bankruptcy filing, and defendant did not respond to creditor's demand letter with any assertion of stay's protection).

In this case, despite the fact that Garner's co-Plaintiff Colwell informed Judge Adams of her bankruptcy and received the benefit of the automatic stay in September 2005, Garner did not inform this Court or the Defendants of his bankruptcy until more than three and half years after the discharge order and nearly two years after the final decree closed the case. [Bankruptcy Doc. 21, 38.] Accordingly, equitable reasons exist to excuse any unknowing violation of the automatic stay in this case.

Regarding the discharge, even though Judge Adams found Garner liable to the Defendants for a to-be-determined amount of costs and attorney fees in August and October 2005, Garner did not list the Defendants and fee obligation on his list of creditors and schedule of liabilities filed in February 2006, as required by 11 U.S.C. § 521(a)(1).

As the Sixth Circuit summarized in *In re Madaj*:

A discharge under 11 U.S.C. § 727 discharges every prepetition debt, without regard to whether a proof of claim has been filed, unless that debt is specifically excepted from discharge under 11 U.S.C. § 523.

Section 523(a)(3) contains the only exceptions for unlisted and unscheduled debts.

. . .

Section 523(a)(3)(A) excepts from discharge all other debts . . . which are not listed by the debtor in his petition and schedules in time for the creditor to file a timely

Case No. 1:02-CV-1286
Gwin, J.

> proof of claim.
>
> However, even 523(a)(3)(A) does not except an unscheduled debt from discharge if the creditor had notice or actual knowledge of the bankruptcy case in time for timely filing of a proof of claim.

*In re Madaj*, 149 F.3d 467, 469 (6th Cir. 1998).

Stated succinctly, under § 523(a)(3)(A), "the debt is discharged so long as it is scheduled in time for the creditor to file a proof of claim or the creditor finds out about the bankruptcy case in time to do so." 149 F.3d at 469.

In Garner's case, the time for filing a proof of claim elapsed on November 9, 2007. [Bankruptcy Doc. 28.] As noted above, no evidence shows that the Defendants knew of the bankruptcy until December 30, 2009, when Garner filed his first objection to the settlement offered in this case. [Doc. 372.] Because Garner's obligation to pay costs and attorney fees was not scheduled in time for the Defendants to file proof of a claim, the bankruptcy did not discharge that obligation. Accordingly, Garner is liable for the attorney fees as ordered in this case.

Garner's bankruptcy and its supporting documents do, however, provide some additional evidence of his inability to pay the full fee award. On the other hand, it has been four years since Garner's fresh start. On balance, because Garner's bankruptcy indicates his inability to pay the full amount, the Court reduces Garner's attorneys fees obligation to **$5000.00**.

**B. Sanction**

With his March 2007 order, Judge Adams also held the Plaintiffs' former attorney Frost jointly and severally liable for the $660,103.49 attorney fee award as a sanction under 28 U.S.C. § 1927. On appeal, the Sixth Circuit affirmed the district court's finding that Frost was sanctionable but reversed and remanded for a more thorough determination of the appropriate sanction. As

-11-

Case No. 1:02-CV-1286
Gwin, J.

outlined in the Sixth Circuit's opinion, this Court must: (1) determine the point in time when the pursuit of each of her clients' claims became unreasonable and vexatious, (2) calculate the attorney fees owed by her after that point in time, (3) decide whether that liability should be joint and several with each of her clients, and (4) consider any proof that she may wish to present regarding her inability to pay. *Garner*, 554 F.3d at 646.

The Court finds attorney Frost jointly and severally liable with Plaintiffs Brown, Lilly, Garner for their respective fee awards ($20,672.94) and solely liable for $298,515.40 in attorney fees as a sanction. As with her clients, the Court holds that the Attorney Frost's pursuit of her clients' claims became unreasonable and vexatious at the close of discovery: July 31, 2003. Not only do the Defendants agree that this date is appropriate, [Doc. 358 at 19], but also using this date gives attorney Frost the greatest potential benefit of the doubt.

As to the total amount owed, the Court finds that after July 31, 2003, the Defendants incurred $298,515.40 in compensable attorney fees. As previously noted, this number includes $238,516.25 in non-fractionable general fees, excluding time spent in the pursuit of fees, costs, and sanctions ($39,939.87) and $59,999.15 in fees attributable to the individual plaintiffs.

Next the Court finds that attorney Frost should be held jointly and severally liable with each of her clients for this fee award. As the Sixth Circuit noted in *Garner*: "Frost herself conceded during oral argument that she, if anyone, should be held liable for the attorney fees." 554 F.3d at 646. Moreover, the Sixth Circuit has previously upheld a judgment holding an attorney jointly and severally liable for attorney fees along with his clients as a sanction under § 1927. *See Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818 (6th Cir. 2000). Given that even attorney Frost recognizes her primary responsibility for the excessive costs created by this litigation, the Court

-12-

Case No. 1:02-CV-1286
Gwin, J.

finds Frost jointly and severally liable for the fee award.

Finally, the Court considers attorney Frost's proof of her inability to pay. Frost says she is "unable to pay any sanctions" as she "is barely paying her bills now." [Doc. 366 at 1.] But Frost nets $2717 a month. Frosts's income, after debt service, is $1520.88. Frost's monthly debt payments are: (1) $229.95 student loan; (2) $150 Household Bank MasterCard credit card (approximate) (3) $75 Capital One Visa credit card (approximate); (4) $270.15 First Internet Bank; (5) $48.54 Sunoco gas card; and (6) $422.48 2008 Hyundai car loan. Frost undoubtedly has other necessary, non-discretionary expenses not listed. The Court, therefore, finds partial inability to pay and lowers Frost's liability for attorneys fees by 90%. Therefore, Frost is liable for **$29,851.54** in attorney fees. Frost's joint and several liability for **$20,672.94** with Plaintiffs Brown, Lilly, and Garner for their respective fee awards is unchanged.

### III. Conclusion

For the foregoing reasons, the Court finds Plaintiff Vanessa Brown liable for **$8883.91** in attorney fees, Plaintiff Rayshunn Lilly liable for **$6789.03** in attorney fees, Plaintiff Anthony Garner liable for **$5000.00** in attorney fees, and attorney Merrie Frost jointly and severally liable for **$20,672.94** with Plaintiffs Brown, Lilly & Garner for their respective fee awards and solely liable for **$29,851.54** in attorney fees as a sanction.

IT IS SO ORDERED.

Dated: August 20, 2010         s/         *James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE